**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): 24-2032              Caption [use short title]

Motion for: Bail Pending Appeal

Set forth below precise, complete statement of relief sought:

Appellant Williams seeks an order granting bail pending appeal and an order directing Appellant's release from custody until her appeal is resolved.

United States v. Williams

MOVING PARTY: Appellant Bevelyn Williams     OPPOSING PARTY: United States of America

☐ Plaintiff      ☐ Defendant

☑ Appellant/Petitioner      ☐ Appellee/Respondent

MOVING ATTORNEY: Florian Miedel     OPPOSING ATTORNEY: Mitzi Steiner, Emily Johnson

[name of attorney, with firm, address, phone number and e-mail]

Miedel & Mysliwiec LLP      United States Attorney's Office

52 Duane Street, 7th Floor, NY NY 10007      26 Federal Plaza, 37th Floor, NY, NY 10278

212-616-3024, fm@fmamlaw.com      212-637-2200; mitzi.steiner@usdoj.gov; emily.johnson@usdoj.gov

Court- Judge/ Agency appealed from: U.S. District Court, Southern District of New York (Rochon,J.)

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know

Does opposing counsel intend to file a response:
☑ Yes ☐ No ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☐ No

Requested return date and explanation of emergency: _____

Is the oral argument on motion requested? ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☐ Yes ☑ No If yes, enter date: _____

Signature of Moving Attorney:

_____ Date: 11/17/24     Service: ☑ Electronic ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

No. 24-2032

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

UNITED STATES OF AMERICA,

Appellee,

v.

BEVELYN WILLIAMS,

Appellant.

_____

**MOTION OF DEFENDANT-APPELLANT
FOR BAIL PENDING APPEAL**

Appeal from the Unites States District Court
For the Southern District of New York
Before the Honorable Jennifer L. Rochon

Florian Miedel, Esq.
MIEDEL & MYSLIWIEC LLP
52 Duane Street, 7th Floor
New York, New York 10007
212-616-3042

*Counsel for Appellant Bevelyn Williams*

# TABLE OF CONTENTS

PROCEDURAL HISTORY ........................................................................................1

STATEMENT OF FACTS ......................................................................................2

ARGUMENT .........................................................................................................5

   A.  Legal Standard ..........................................................................................5

   B.  Flight Risk ................................................................................................6

   C.  Substantial Questions...............................................................................9

      1.  First Amendment Instruction...............................................................9

      2.  Constitutional Challenges to the FACE Act .....................................16

         a.  The Commerce Clause Cannot Support the FACE Act After *U.S. v. Lopez* and *U.S. v. Morrison* ....................................................18

         b.  FACE is a Content Based Regulation of Speech and Expressive Conduct and Cannot Survive Scrutiny After *Dobbs* .............................................19

   D.  Likely to Result in Dismissal or a New Trial ...................................21

CONCLUSION .....................................................................................................22

COMPLIANCE CERTIFICATE…………………………………………….....23

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022)..............4,16,17,21

*Jingrong v. Chinese Anti-Cult World Alliance Inc.*, 16 F.4th 47 (2d Cir. 2021)......19

*Mathews v. United States*, 485 U.S. 58, 63 (1988).................................................13

*McCullen v. Coakley*, 573 U.S. 464 (2014).............................................16,17,19,20

*New York by James v. Griepp*, 11 F.4th 174 (2d. Cir. 2021)...................................21

*New York es rel. Underwood v. Griepp*, 991 F.3d 81 (2d Cir. 2021), vacated on other grounds 11 F.4th 174 (2d Cir. 2021) ................................................................20

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015)....................................16,17,19

*United States v. El-Mezain*, 664 F.3d 467, 536 (5th Cir. 2011) ...............................14

*United States v. Fleschner*, 98 F.3d 155, 158 (4th Cir. 1996).................................14

*United States v. Freeman*, 761 F.2d 549, 551 (9th Cir. 1985) ................................14

*United States v. Hassan*, 742 F.3d 104, 128 (4th Cir. 2014)...................................15

*United States v. Hunt*, 82 F.4th 129, 137 (2d Cir. 2023).........................................12

*United States v. Hunt*, 573 F.Supp.3d 779, 814 (EDNY 2021)...............................12

*United States v. Lopez*, 514 US 549 (1995)...............................................................18

*United States v. Morrison*, 529 US 598 (2000) .............................................16,17, 18

*United States v. O'Brien*, 391 U.S. 367 (1968) .......................................................17

*United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997)........................................14

*United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985)......................................5

*United States v. Weslin*, 156 F.3d 292 (2d Cir. 1998) ........................................17,20

*United States v. Williams*, 701 F.Supp.3d 257 (SDNY 2023)......................10,17,21

**Statutes**

18 U.S.C. § 248(a)(1)(2)(d)(1).............................................................................passim

18 U.S.C. § 2339A....................................................................................................15

18 U.S.C. § 2339B ......................................................................................14

18 U.S.C. § 3143(b)(1)(A)(B)..............................................................passim

## Rules

Fed. R. App. P. 9(b) ..............................................................................1,5

## Legislative History

S.Rep. No. 103-117, 103rd Cong., 1st Sess. 24 (1993) .............................................20

## PROCEDURAL HISTORY

On February 22, 2024, Appellant, Bevelyn Williams, was convicted after a jury trial, of one count of violating the Freedom of Access to Clinic Entrances ("FACE") Act, 18 U.S.C. § 248(a)(1). Appellant had been released on bond from the time of her arrest on December 16, 2022, and remained at liberty after her conviction.  On July 24, 2024, the District Court (Rochon, J.), imposed a custodial sentence of 41 months, but permitted Appellant to self- surrender to a designated Bureau of Prisons facility on October 16, 2024.  On July 30, 2024, Appellant filed a timely notice of appeal.  Appellant's brief is due before this Court on or before December 17, 2024.

On October 7, 2024, Appellant filed a motion for bail pending appeal in the District Court pursuant to 18 U.S.C. § 3143(b).  The District Court denied that motion on October 15, 2024, and Appellant surrendered to her designated BOP facility the next day, as directed.

Appellant respectfully submits this memorandum of law in support of her motion, pursuant to Fed. R. App. P. 9, for review of the District Court's order filed October 15, 2024, denying her motion for bail pending appeal. Addendum Exhibit ("Ex.") A.

1

## STATEMENT OF FACTS

On December 13, 2022, Appellant and her co-defendant, Edmee Chavannes, were charged in a three-count indictment with conspiracy to violate the FACE Act, 18 U.S. Code § 248, (Count 1), and each was charged with a substantive count (Count 2 for Appellant, Count 3 for Chavannes). The conspiracy charge was based on allegations that from about 2019 to 2022, Appellant and Chavannes had engaged in several demonstrations in several states with an intent to violate the FACE Act. *See* 22-CR-684 (JLR) Dkt. No. 2 at 1. The substantive counts were based on two specific days of protesting that occurred on June 19th and 20th, 2020, at a Planned Parenthood in lower Manhattan. *See* Dkt. No. 2. In February 2024, Appellant and Chavannes stood trial by jury before District Judge Rochon. After a ten-day trial, both Appellant and Chavannes were acquitted of the conspiracy count (Count 1), Chavannes was also acquitted of her substantive count, but Appellant was convicted of Count 2.

As they had on previous occasions, Appellant and Chavannes protested loudly and vociferously during the June 2020 activities at the Manhattan Planned Parenthood. Appellant's statements were particularly provoking. She said that she would "'terrorize this place,' that 'we're gonna terrorize you so good, your

business is gonna be over,' that this was 'war,' and that she would act by 'any means necessary.'" Ex. A at 2.

Despite their rhetoric at the Manhattan Planned Parenthood, Appellant and Chavannes never displayed any weapons, attempted to storm the doors or enter the clinic in any way, attempted to damage any part of the clinic property, or ever chained entrances shut or laid down in front of any entrances. (Dkt. 120 at 176; Dkt. 119 at 399, 402, 407, 418, 419, 421, and 431). Appellant was sometimes positioned in front of the door to the clinic, but the evidence at trial showed that Appellant stepped out of the way to let patients and employees pass unobstructed. (Dkt. 119 at 399-401, 419, and 432).

At one point during the protest on June 20th, 2020, Appellant was standing in front of the main entrance door of the Planned Parenthood. (Dkt. 119 at 440; *see also* DX E, GX 161). While Appellant was looking away, an employee and a patient walked up to the door and the employee forcibly opened the door onto Appellant's backside. (Dkt. 119 at 440, 441). Appellant reacted by pushing the door off of her body and back towards the doorframe. (Dkt. 119 at 338). As Appellant did so, the employee's hand was caught in the door. Appellant appeared to push back against the door for about 10 seconds, before the door was opened, releasing the employee's hand. *Id.* No one called the police or made a criminal complaint at that time.

3

On August 13, 2023, prior to trial, Appellant filed a motion to dismiss the indictment. *See* Dkt. 54. The motion raised a number of claims questioning the constitutional validity of the FACE Act, including that Supreme Court decisions had undermined the Commerce Clause's basis for the FACE Act, and that the FACE Act is a content-based regulation of speech and expressive conduct that cannot survive scrutiny after *Dobbs v. Jackson Women's Health Org*. The District Court rejected these claims and denied Appellant's motion, both on the merits and because it concluded that such arguments were foreclosed by binding Second Circuit precedent. *See* Dkt. 70, at 13-14.

Also before trial, as part of its proposed requests to charge, the defense requested a jury instruction for the District Court to define for the jury the parameters of the First Amendment in the context of this case. *See* Dkt. No. 77, at 12. The government opposed and filed a *motion in limine* asking the Court to preclude the defense from arguing to the jury that Appellant was engaged in speech or conduct protected by the First Amendment. Dkt. No. 79, at 11-12. At the final pretrial conference, the Court largely granted the government's request, ruling that Ms. Williams could not argue to the jury that her "actions were aligned with the First Amendment." Dkt. No. 97, at 68. The Court also denied Ms. Williams's request to instruct the jury on the First Amendment. *Id.* at 68.

4

As noted, the District Court denied Appellant's motion for bail pending appeal on October 15, 2024, and Appellant began serving her sentence the next day.

**ARGUMENT**

For the reasons set forth below, the District Court erred when it denied Appellant's motion for bail pending appeal. Appellant is not a flight risk and is presenting substantial questions of law and fact on appeal. Pursuant to 18 U.S.C. § 3143(b) and Rule 9B of the Fed. R. App. Proc., this Court should grant Appellant's motion to be at liberty for the pendency of her appeal.

A. <u>Legal Standard</u>

This Court "shall order the release" of a defendant who establishes (1) "by clear and convincing evidence that [she] is not likely to flee or a pose a danger" to the community; and (2) her "appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . reversal [or] an order for a new trial." 18 U.S.C. § 3143(b); *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985). A defendant does not need to prove that her appeal is likely to succeed; rather, a "substantial" question is "one of more substance than would be necessary

to a finding that it was not frivolous"; *i.e.*, "a 'close' question or one that very well could be decided the other way." *Id.* (internal quotation marks omitted).

B.    Flight Risk

The record is clear that Appellant is not a flight risk or a danger to the community, despite the District Court's newly discovered conclusion to the contrary. Upon her arrest for violating the FACE Act, an offense with a sentencing range of 0-10 years, she was released on a $30,000 personal recognizance bond. During the 18 months between her arrest and her sentencing, each time Appellant sought a modification of her travel restrictions, the government consented and the Court approved the request. *See e.g.* Dkt. Nos. 19, 22, 31, 40, 60, 64, 89, 114. These requests were agreed to and approved even after Appellant was convicted. *See e.g.* Dkt. Nos. 130, 140, 142, 146, 154, 156. Nor did the government seek Appellant's detention after her conviction, or even after her sentencing. *See* Dkt. 127 at 918; Dkt. 151 at 59. The Court agreed. *See* Dkt. 151 at 59 ("I agree with that, and I will have voluntary surrender in this case. I find that Ms. Williams has been perfectly compliant on pretrial supervision, and I don't see any need for remand at this time.").

In its denial of Appellant's motion for bail pending appeal, the District Court for the first time suggested that Appellant might be a risk of flight after all – based

6

on what the District Court characterized as a "flurry" of post-sentencing motions by Appellant in advance of her surrender date "seeking to avoid incarceration, exhibiting a desperation that causes the Court to be concerned of a risk of flight." Ex. A. at 13.

The District Court's conclusion was incorrect. For one, Appellant filed a total of two motions – hardly a "flurry." In the first motion, *consented to by the government*, Appellant asked the District Court to postpone her surrender date by six weeks to permit her to have bariatric surgery, which her doctor deemed advisable. To the surprise of the parties, the District Court denied the request, claiming that the motion appeared to be "an attempt to postpone the incarceratory sentence that has been imposed and is scheduled to soon commence." Ex. A at 2, 3. The second motion filed as part of this alleged "flurry" was a motion for bail pending appeal, pursuant to 18 U.S.C. § 3143(b).

Second, the filing of two legally appropriate, non-frivolous, motions does not transform a person who both the government and the District Court considered not to be a flight risk for more than 18 months into someone who cannot be trusted to adhere to court orders. From arraignment through sentencing, more than 18 months later, the District Court did not consider Appellant to be a flight risk. Even after sentencing, after imposing 41 months' incarceration, the Court freely permitted Appellant to self-surrender nearly three months later. Throughout that

time, Appellant never violated the conditions of her release or in any other way caused the Court to be concerned that she would fail to comply with the conditions of her release or flee the jurisdiction. The Court repeatedly permitted Ms. Williams to travel around the country, even after sentencing, and never expressed concern about Appellant's "travel throughout the United States" or her "seeming inability to control her impulses." Ex. A at 13.

Those concerns only emerged when Appellant filed her unopposed request for an extension of her surrender date, followed by a motion for bail pending appeal. Legal motions, appropriately filed in court, are not evidence of a willingness to "try anything that she can to avoid incarceration." Ex. A at 14. Appellant did not try "anything." She sought an extension to have a medical procedure that was advised by her doctor, as demonstrated to the District Court. And she sought bail pending appeal, a normal, if not routine, request made by defendants who are out on bail and plan to present issues on appeal that may result in reversals. Appellant made no further attempt to delay her surrender date, let alone fail to appear for her incarceration. As directed, Appellant surrendered at her designated BOP facility on October 16, 2024, and is currently serving her sentence.

Under these circumstances, the District Court's speculation about Appellant's motives was unwarranted. Appellant established by more than clear and convincing evidence that she was not a flight risk.[1]

C.      Substantial Questions

The primary basis for the District Court's denial of Appellant's motion for bail pending appeal, however, was its conclusion that the identified appellate issues did not present "substantial question of law or fact" to warrant release pending appeal. For the reasons explained below, the Court's decision was incorrect.

1. *First Amendment Instruction*

The first issue presented to the District Court as a substantial appellate claim was the District Court's denial of Appellant's pretrial request to provide the jury with an instruction about the First Amendment, and to allow Appellant to argue to the jury that certain of her speech was constitutionally protected. The District Court improperly rejected this claim.

18 U.S.C. § 248, the FACE, Act, specifically instructs that "[n]othing in this section shall be construed (1) to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal

---

[1] The District Court only addressed the question of flight risk, not danger to the community. Because at no time has the government or the Court suggested that Appellant presents a danger to the community, it is not discussed here.

prohibition by the First Amendment to the Constitution." § 248(d). Given the statute's reference to the First Amendment, Appellant requested a jury instruction to define for the jury the parameters of the First Amendment in the context of this case. *See* Dkt. No. 77, at 12. The government opposed, and filed a *motion in limine* asking the Court to preclude the defense from arguing to the jury that Ms. Williams was "engaged in a lawful expression of [her] personal beliefs—whether political, religious, or social—and that the Government has charged [her] with offenses for engaging in conduct that is protected by either the Free Speech Clause or Free Exercise Clause of the First Amendment." Dkt. No. 79, at 11-12. The defense opposed the government's motion. Dkt. No. 83, at 18, 16; Dkt. 97, at 68.

The District Court largely granted the government's request, ruling that Ms. Williams could not argue to the jury that her "actions were aligned with the First Amendment." Dkt. 97 at 68. Relying on its previous decision that the FACE Act passed constitutional muster, the Court determined that First Amendment arguments played no role under this prosecution. As a result, the Court also denied Ms. Williams's request to instruct the jury on the First Amendment. *Id.* at 68-69; *see also* Dkt. 123 at 713-714.

In its denial of Appellant's motion for bail pending appeal, the District Court again cited to its original ruling that the FACE Act was constitutional. *See United States v. Williams*, 701 F.Supp.3d 257 (SDNY 2023) ("*Williams I*"). Appellant's

10

request for a First Amendment jury instruction was not, however, a renewed attack

on the FACE Act's constitutionality. Instead, Appellant urged the District Court to

provide guidance to the jury in the form of a jury instruction about when words

crossed the line from protected speech to "true threats" or "intimidation," and

when language-imbued conduct became criminal.

The District Court's ruling failed to account for the complexity of a statute

that can be violated by both speech and conduct. As charged to the jury, the

elements of Appellant's count of conviction were as follows:

> First, that Williams used force, threat of force, or physical obstruction
> as alleged in the indictment.
> Second, that Williams intentionally injured, intimidated, or interfered
> with patients or employees of the Manhattan Planned Parenthood, or
> attempted to do so.
> Third, that Williams acted as she did because the employees of the
> Manhattan Planned Parenthood were and had been providing
> reproductive health services or the patients were and had been
> obtaining reproductive health services.
> Fourth, that Williams' conduct resulted in bodily injury.

Dkt. 125 at 847. The first element can be established by proof of either conduct

(force or physical obstruction) or speech (threat of force). Because the jury could

find that speech met this element, an instruction defining protected speech versus

unprotected "true threat" language would have been helpful to the jury.

"[W]hether words used are a true threat is a question of fact for the jury." *United*

11

*States v. Hunt*, 82 F.4th 129, 137 (2d Cir. 2023) (internal citations and quotation marks omitted).

The evidence established that Appellant employed all kinds of provocative language during her protest outside the Manhattan Planned Parenthood. Evidence, for example, included "video footage of Williams stating on June 19, 2020, within earshot of clinic workers, that she would 'terrorize this place,' that 'we're gonna terrorize you so good, your business is gonna be over,' that this was 'war,' and that she would act by 'any means necessary.'" Ex. A at 2. Without a First Amendment explanation, the jury might have concluded that the first element of the count was met simply through this language. With the benefit of an instruction, however, the jury might have decided that even advocacy for the use of force or violence, if made in general terms, was protected. *See e.g. United States v. Hunt*, 573 F.Supp.3d 779, 814 (EDNY 2021) (jury was properly instructed that "the First Amendment protects vehement, scathing and offensive criticism of public officials, including members of Congress," as well as "political expressions of opinion" and "even advocacy of the use of force or violence").

The second element of § 248 ("intimidated or "attempted to intimidate") requires a similar analysis. Intimidation can be accomplished both through physical action and words. But not all speech that has the effect of intimidating someone is unlawful. A First Amendment instruction would have helped the jury

12

to parse Appellant's language and actions to decide what constituted "intimidation."

The District Court focused on the fourth element found by the jury – that Appellant's "conduct resulted in bodily injury" – suggesting that since such conduct is not protected by the First Amendment, the question of whether an instruction should have been given was irrelevant. *See* Ex. A at 9-10. That analysis is not correct, however. It was possible for the jury to convict Appellant even if it concluded that the first two elements were established by speech, not conduct. For example, the jury could have believed that Appellant pushed the door in retaliation for having the door pulled violently into her back, not to intentionally injure or intimidate the employee *because* she was a reproductive health worker. Separately, the jury could have found that Appellant made general threats of violence toward Planned Parenthood employees and patients *because* they were associated with a reproductive health facility. A First Amendment instruction would have been crucial in assisting the jury to determine whether the speech they used to consider the first two elements was lawful or not.

A First Amendment jury instruction is not a novel concept. It is well settled that "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). *See also*

13

*United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997) ("Upon a proper request, a defendant is entitled to a jury instruction on any defense theory for which there is a foundation in the evidence.").

This general rule also applies when a defendant requests a First Amendment instruction. *See e.g. United States v. Fleschner*, 98 F.3d 155, 158 (4th Cir. 1996) ("Having made a timely request, the defendants would have been entitled to an instruction on a First Amendment defense if there were evidence sufficient for a reasonable jury to find in their favor on that account."). In a frequently cited case in this area, *United States v. Freeman*, 761 F.2d 549, 551 (9th Cir. 1985), the 9th Circuit held: "Where there is some evidence, however, that the purpose of the speaker or the tendency of his words are directed to ideas or consequences remote from the commission of the criminal act, a defense based on the First Amendment is a legitimate matter for the jury's consideration."

The FACE Act is not like most other federal criminal statutes. In a case involving a statute that expressly incorporates the First Amendment (18 U.S.C. 248(d)(1)), and one in which both conduct *and* speech can comprise a violation, the jury should be instructed on what the First Amendment protects and what it does not. That has certainly been the case in prosecutions involving the material support statute, 18 U.S.C. § 2339B, which contains an identical First Amendment reference. *See* 18 U.S.C. § 2339B(i). In *United States v. El-Mezain*, 664 F.3d 467,

14

536 (5th Cir. 2011), for example, the 5th Circuit approved the district court's reading of § 2339B(i) and the text of the First Amendment, along with an instruction on how to evaluate the First Amendment in the context of actions constituting material support. *See also United States v. Hassan*, 742 F.3d 104, 128 (4th Cir. 2014) (approving of district court's First Amendment instruction in an 18 U.S.C. § 2339A material support case, while rejecting defendants' specific proposed First Amendment language).

In its decision here, the District Court completely ignored other cases in which First Amendment instructions were given. Instead, it relied primarily on its own prior determination that the FACE Act was constitutional. However, just because the FACE Act is constitutional on its face does not mean that the First Amendment protects no speech or protest conduct charged as a violation of the FACE Act. The statutes at issue in the cases cited above, such as the material support or true threat statutes, had also passed constitutional muster, and yet courts still instructed on the First Amendment when requested to do so.

Whether Appellant's lawful protests, and specifically her protest language, veered into criminality was precisely the question the jury was tasked to answer. But by having been deprived of an explanation and definition of the parameters of constitutionally protected speech, the jury had to answer this question with one

15

hand tied behind its back. The Court's failure to properly instruct the jury deprived Appellant of a fair trial. This represents a "substantial question" on appeal.

   2. *Constitutional Challenges to the FACE Act*

In her pretrial motion to dismiss, Appellant argued that the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) ("*Dobbs*") changed the legal landscape supporting the FACE Act, since there was no longer a compelling – or even a substantial – federal government interest in protecting access to abortion. *See* Dkt. 54. She raised multiple facial constitutional challenges to the Act's continued validity, and two of these arguments in particular will be reprised and fully briefed on appeal.

Specifically, Appellant will argue that the FACE Act is unconstitutional after *United States v. Morrison*, 529 U.S. 598 (2000), as there is no longer a basis under the Commerce Clause for the exercise of federal government authority to regulate the behavior of citizens engaged in expressive speech or conduct *outside* a private health clinic. She will further argue after the Supreme Court's holdings in *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015) and *McCullen v. Coakley*, 573 U.S. 464 (2014), the FACE Act should be considered a content-based regulation of speech and expressive conduct, subject to strict scrutiny analysis, whereas after *Dobbs* the FACE Act cannot survive even intermediate scrutiny, as there is no

16

longer a substantial federal government interest in protecting abortion access, nor is the Act sufficiently narrowly tailored to meet whatever interest remains.

The District Court rejected all of the defendants' constitutional arguments, both in its decision on the motion to dismiss and in the motion for bail pending appeal. *See Williams I*, 701 F.Supp.3d 257; Ex. A at 6-7. In so doing, the District Court relied heavily on this Court's decision in *United States v. Weslin*, 156 F.3d 292 (2d Cir. 1998), in which this Court found that the FACE Act was a constitutional exercise of legislative authority under the Commerce Clause, and that it was a content-neutral regulation of conduct that met the three-part *O'Brien* test. *United States v. O'Brien*, 391 U.S. 367 (1968).

While Appellant does not dispute that *Weslin* remains the governing law in this Circuit as to the constitutionality of the FACE Act, and that the District Court was bound by its precedential authority, it is precisely the dual holdings in *Weslin* that Ms. Williams is challenging on appeal. *Weslin* was not only decided prior to *Dobbs*, (2022) but also prior to *Reed* (2015), *McCullen* (2014), and *Morrison* (2000). These two issues of constitutionality are substantial, and they are non-frivolous. The Second Circuit has not squarely addressed either of them since the Supreme Court modified the law of content-neutrality and the scope of the Commerce Clause. If successful, either argument would overturn *Weslin*, as well as Appellant's conviction.

17

### a. The Commerce Clause Cannot Support the FACE Act After U.S. v. Lopez and U.S. v. Morrison

In *Morrison*, the Supreme Court, relying on its recent decision in *United States v. Lopez*, 514 US 549 (1995), rejected the jurisdictional hook of the Commerce Clause to support a civil remedy provision in the Violence Against Women Act. It found that gender-based violence was not an activity that had a substantial effect on interstate commerce – notwithstanding Congressional findings to the contrary. *Morrison*, 429 U.S. at 614 ("As we stated in *Lopez*, '[S]imply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so.'"). Indeed, the Court flatly rejected both the connection between gender-based violence and interstate commerce cited in the legislative history of VAWA, as well as "the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617.

The FACE Act, meanwhile, is directed at noneconomic, sometimes violent conduct (and speech) between and among persons *outside* of private health clinics or churches. Women's reproductive health is not a commodity, and the aggregate effect on interstate commerce of violence, interference, or intimidation directed at such reproductive health providers or their patients is too attenuated to survive *Lopez* and *Morrison*. That this is a non-frivolous argument that raises a substantial issue meriting consideration – notwithstanding its rejection among other circuits

18

since *Morrison* – is corroborated by Judge Walker's concurrence in the recent Second Circuit case *Jingrong v. Chinese Anti-Cult World Alliance Inc.*, 16 F.4th 47 (2d Cir. 2021), in which he noted, in reference to the portion of the FACE Act regulating violence or intimidation against houses of worship, that *Lopez* and *Morrison* "expressly rejected the notion that the commerce power reaches 'noneconomic, violent criminal conduct' of the sort proscribed here 'based solely on that conduct's aggregate effect on interstate commerce.'" *Jingrong*, 16 F.4th at 63 (Walker, J. concurring). Although *Jingrong* dealt solely with § 248(a)(2) of the Act (protecting places of religious worship), the analysis is the same, as the conduct being regulated under § 248(a)(1) and (2) is identical.

> b. *FACE is a Content Based Regulation of Speech and Expressive Conduct and Cannot Survive Scrutiny After* Dobbs

With respect to First Amendment analysis, *Reed* altered the landscape of content-neutrality law by clarifying that "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed," or, even if facially content-neutral, "cannot be 'justified without reference to the content of the regulated speech.'" *Reed*, 576 U.S. at 163-4. *McCullen*, furthermore, instructed that even when a statute is deemed content-neutral and is not subject to strict scrutiny – in that case, a state statute regulating access to "buffer zones" around abortion clinics (which, notably, did not contain the intent language of the FACE Act) – it nevertheless must be "narrowly

19

tailored to serve a significant government interest" so as not to "burden substantially more speech than is necessary." *McCullen v. Coakley*, 573 U.S. at 486 (internal citation omitted).

In this context – pursuant to clarification of the law arising after *Weslin* – the FACE Act cannot be considered "content-neutral," because it does not prohibit all interference with patients or providers of reproductive health services, but only those whose interference is *motivated by the fact* that those patients or providers are "obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1). The Act permits the government to look into the content of the speech or expressive conduct itself in order to determine its motivation and the intent of the speaker or activist.[2] This places the FACE Act squarely within the ambit of content-based regulation of speech, and should subject it to strict scrutiny analysis.[3]

The Second Circuit has not addressed these content-neutrality questions after *Dobbs*, and has only done so once after *Reed*, in *New York es rel. Underwood v. Griepp*, 991 F.3d 81 (2d Cir. 2021), *vacated on other grounds* 11 F.4th 174 (2d Cir. 2021), in which it reaffirmed its holding in *Weslin*. In denying Appellant's motion

---

[2] The legislative history of the FACE Act further supports this assertion. *See* S.Rep. No. 103-117, 103rd Cong., 1st Sess. 24 (1993); Dkt. 54 at 19.

[3] Moreover, *Dobbs* ensures that the regulation of expressive conduct outside a private health care facility can no longer withstand even intermediate scrutiny.

to dismiss, the District Court interpreted the vacated *Griepp* opinion to mean that "Defendant's argument that *McCullen* and *Reed* overrule *Weslin* has already been rejected in this Circuit," adding "[t]hat the Second Circuit later vacated its opinion on other grounds does not diminish its reasoning or that of the District Court." *Williams I* at 272. However, in vacating its original opinion, the Court emphasized that it very specifically *declined* to "reach [the protesters'] . . . constitutional challenges to FACE" after *Weslin*, thus leaving those issues ripe for re-consideration. 11 F.4th at 176.

*Dobbs*, and the other Supreme Court decisions discussed above, have altered the legal landscape surrounding the constitutionality of the FACE Act. The District Court was bound by existing but outdated appellate decisions, but this Court is not. The questions presented here are important and warrant serious consideration. As such, they are "substantial questions" under 18 U.S.C. § 3143(b).

### D.    Likely to Result in Dismissal or a New Trial

If this Court agrees with appellate claims about the continued viability of the FACE Act, the result will be reversal of Appellant's conviction and dismissal of the indictment, thereby satisfying the "likely to result in" reversal, a new trial, a noncustodial sentence factor in 18 U.S.C. § 3143(b)(1)(B). If this Court agrees

with Appellant's First Amendment instruction argument, the likely result will be a new trial with appropriate jury instructions.

## CONCLUSION

For the reasons stated above, Appellant's motion for release pending appeal should be granted, and the Court should direct her to be released from BOP custody until such time, if it occurs, that her judgment is affirmed.

Dated:     New York, New York
November 17, 2024

Respectfully submitted,

Florian Miedel
MIEDEL & MYSLIWIEC LLP
52 Duane Street, 7th Floor
New York, New York 10007
212-616-3042
fm@fmamlaw.com

*Counsel for Appellant Williams*

22

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

This document complies with the type-volume limit of Fed. R. App. P. 27(d) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4964 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in Microsoft Word using a proportionally spaced typeface (Times New Roman), size 14 point.

Dated:     New York, New York
               November 17, 2024

Respectfully submitted,

Florian Miedel
MIEDEL & MYSLIWIEC LLP
52 Duane Street, 7th Floor
New York, New York 10007
212-616-3042
fm@fmamlaw.com

*Counsel for Appellant Williams*

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

- v. -

BEVELYN BEATTY WILLIAMS,

Defendant

No. 1:22-cr-00684-JLR

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

On February 22, 2024, a jury convicted Bevelyn Beatty Williams ("Williams" or "Defendant") of violating the Freedom of Access to Clinic Entrances ("FACE") Act, 18 U.S.C. § 248(a)(1). Dkt. 110. After granting Defendant's request for an extension of her sentencing hearing, on July 24, 2024, the Court entered judgment against Defendant and imposed the sentence of incarceration for 41 months followed by two years of supervised release. Dkt. 149; Dkt. 151 at 54:15-21, 55:11-12. Defendant timely appealed from her conviction and sentence. *See* Dkt. 150. Now, the week before her surrender date, Defendant requests that this Court order her released on bail pending appeal pursuant to 18 U.S.C. § 3143(b) ("Section 3143(b)"). Dkt. 164 ("Mot."); Dkt 169 ("Reply"). For the following reasons, Defendant's request for bail pending appeal is DENIED.

## BACKGROUND

The Court assumes the parties' familiarity with the facts and background of this case. The Court briefly summarizes the procedural history and facts relevant to the instant motion.

### I. The Indictment and Motion to Dismiss

On December 13, 2022, a grand jury charged: (1) Williams and her co-defendant, Edmee Chavannes, with conspiracy to violate the FACE Act; (2) Williams with substantively

violating the FACE Act, resulting in bodily injury; and (3) Chavannes with substantively violating the FACE Act.  Dkt. 2 (the "Indictment").

Williams and Chavannes filed a joint motion to dismiss the Indictment on August 14, 2023.  Dkts. 55, 56.  The Court denied that motion on November 8, 2023.  *United States v. Williams*, 701 F. Supp. 3d 257, 261 (S.D.N.Y. 2023) ("*Williams I*").

## II.    Trial

A jury trial against Defendant and Chavannes began on February 12, 2024, Dkt. 69; *see* Dkts. 115, 117, 119, 121, 123, 125, 127 (collectively, "Trial Tr.").

Count II of the Indictment, for which Defendant was ultimately found guilty, centered around a June 2020 incident at the Manhattan Planned Parenthood.  At trial, the Government introduced extensive video footage showing Defendant physically blocking the entrance to the Manhattan Planned Parenthood on June 19 and 20, 2020, *see, e.g.*, GXs 117, 122, 150, 162, 187, and directing others to obstruct entrances to the facility, *see e.g.*, GXs 132, 170. Additionally, three witnesses present at the Manhattan Planned Parenthood on June 19 and 20, 2020 – Lauren Betters (a legal observer), Ron Lyman (head of security for Planned Parenthood of Greater New York), and Adrienne Verrilli (a member of the Manhattan Planned Parenthood's executive staff serving as a volunteer escort at the time) – testified that Williams repeatedly blocked the entrances to the facility and directed others to do the same.  *See, e.g.*, Trial Tr. at 143:13-18, 143:25-144:8, 153:15-19, 156:1-157:4, 158:14-24, 206:15-19, 215:4-6, 220:21-23, 350:24-351:7, 381:22-382:4, 456:21-457:2, 460:11-19.  The Government also introduced, among other evidence, video footage of Williams stating on June 19, 2020, within earshot of clinic workers, that she would "terrorize this place," that "we're gonna terrorize you so good, your business is gonna be over," that this was "war," and that she would act by "any means necessary."  GXs 101-102, 171.

2

The Government introduced evidence that the Defendant used force that resulted in bodily injury to Verrilli when Defendant crushed Verrilli's hand in the door of the Manhattan Planned Parenthood. GXs 163, 191. Verrilli testified that she was attempting to escort a fellow Planned Parenthood volunteer into the clinic, but that Williams "was leaning on the door to try to keep it shut." Trial Tr. at 368:14-22. Verrilli testified that she was able to open the door "a little bit" but that Williams "kept leaning on the door and smashed [her] hand in the door." *Id.* As seen on video footage of the incident, filmed from multiple angles, Verrilli screamed that Williams was smashing her hand, but Williams continued to shove the door shut while singing "we shall not be moved." GX 163, GX 191. The video footage showed that it took several people pulling on the door to free Ms. Verrilli's hand as Defendant continued to press the door shut. *Id.* Verrilli testified that she suffered bruising, stiffness, and pain, and that she sought medical attention after the incident. Trial Tr. at 374:8-18. The Government also introduced contemporaneous images of Verrilli's injured hand and her medical records related to the incident. GXs 355, 386.

The jury returned its verdict on February 22, 2024. Dkt. 110. The jury acquitted Chavannes of both counts against her, acquitted Defendant of conspiracy to violate the FACE Act, and convicted Defendant of Count II, a substantive violation of the FACE Act. Trial Tr. at 915:1-19.

### III.    Post-Trial Motion

On April 1, 2024, Defendant moved for judgment of acquittal under Federal Rule of Criminal Procedure ("Rule") 29, or, alternatively, for a new trial under Rule 33. Dkt. 131. The Court denied that motion on May 10, 2024. *United States v. Williams*, No. 22-cr-00684 (JLR), 2024 WL 2112239, at *1 (S.D.N.Y. May 10, 2024) ("*Williams II*").

3

## IV.     Sentencing

The Court originally scheduled the Defendant's sentencing hearing for May 28, 2024. Trial Tr. at 919:17-25.  Defendant requested an adjournment of her sentencing hearing.  Dkt. 136.  The Court granted Defendant's request and adjourned her sentencing hearing to July 24, 2024.  Dkt. 137.

On July 24, 2024, the Court entered judgment against the Defendant and imposed the sentence of incarceration for 41 months followed by two years of supervised release.  Dkt. 149; Dkt. 151 at 54:15-21, 55:11-12.  Instead of remanding the Defendant immediately, the Court granted Defendant's request for voluntary surrender and ordered that Defendant voluntarily surrender on October 16, 2024.  Dkt. 151 at 58:23-59:13.

## V.     Post-Sentencing

Defendant filed a notice of appeal on July 30, 2024.  Dkt. 150.  On September 27, 2024, only about two and a half weeks before her voluntary surrender date, Defendant requested an adjournment of her surrender date.  Dkt. 160 at 1.  In her letter requesting the adjournment, Defendant informed the Court for the first time that she was seeking to undergo a non-emergency surgery less than one week later, on October 3, 2024. *Id.* at 2.  At no time before that letter did Defendant or her counsel relay to the Court that Defendant had a significant health issue that required immediate attention or that imminent surgery was necessary or even contemplated.  On September 30, 2024, the Court denied Defendant's request to adjourn her voluntary surrender date. *United States v. Williams*, No. 22-cr-00684 (JLR), 2024 WL 4345573, at *1 (S.D.N.Y. Sept. 30, 2024) ("*Williams III*").

On October 7, 2024, the week before her voluntary surrender date, Defendant filed the instant request.  Mot.  On October 11, 2024, the Government filed a letter opposing the

request.  Dkt. 168 ("Opp.").   Defendant filed a reply in further support of her request on the same day.  Reply.

## LEGAL STANDARD

### I.   The FACE Act

The FACE Act protects individuals' access to reproductive health services and places of religious worship.  *See* 18 U.S.C. § 248.  Section 248(a)(1) imposes civil and criminal liability when a person:

> by force or threat of force or by physical obstruction,
> intentionally injures, intimidates or interferes with or attempts to
> injure, intimidate or interfere with any person because that
> person is or has been, or in order to intimidate such person or
> any other person or any class of persons from, obtaining or
> providing reproductive health services.

*Id.* § 248(a)(1); see id. §§ 248(b)-(c).  As relevant here, Section 248(b) lays out maximum penalties for convictions under the statute, providing that "if bodily injury results" from a violation of Section 248, "the length of imprisonment shall not be more than 10 years."  *Id.* § 248(b).  Therefore, as to Defendant's conviction for violating the FACE Act as charged in the Indictment, the Government was required to prove, and the jury found, beyond a reasonable doubt that: (1) Defendant used force, threats of force, or physical obstruction; (2) Defendant intentionally injured, intimidated, or interfered with patients or employees of the Manhattan Planned Parenthood, or attempted to do so; (3) Defendant acted as she did because the employees of the Manhattan Planned Parenthood were or had been providing reproductive health services or the patients were or had been obtaining reproductive health services; and (4) Defendant's conduct resulted in bodily injury.  *Id.* §§ 248(a)(1), (b); Dkt. 110; *see also* Indictment.

5

## II.  Bail Pending Appeal

Pursuant to the Bail Reform Act, a court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless" the Court makes certain findings.  18 U.S.C. § 3143(b)(1).  Specifically, a court "shall order" the release of such a person if the court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and
>
> (B) that the appeal is not taken for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
>> (i) reversal,
>>
>> (ii) an order for a new trial,
>>
>> (iii) a sentence that does not include a term of imprisonment, or
>>
>> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

*Id.*  This statutory guidance "establishes a presumption in favor of detention."  *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004); *cf. United States v. Randell*, 761 F.2d 122, 124 (2d Cir. 1985) ("Congress intended section 3143 to reverse the then prevailing presumption in favor of post-conviction bail.").  An appeal which "raises a substantial question of law or fact likely to result in" reversal or an order for a new trial is not one which requires the district court to find "that its own judgment is likely to be reversed on appeal."  *Randell*, 761 F.2d at 124 (quoting 18 U.S.C. § 3143(b)(1)(B)).  Rather, a "substantial" question "is one of more substance than would be necessary to a finding that it was not frivolous.  It is a 'close' question or one that very well could be decided the other way." *Id.* at

6

125 (citation omitted).  If a question is substantial, then the Court "must . . . consider whether that question is so integral to the merits of the conviction on which [the] defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.* (citation omitted).

### DISCUSSION

In opposing this motion, the Government relies centrally on its argument that the Defendant's appeal has not raised substantial questions of law or fact.  The Court agrees.

### I.     Substantial Question

Defendant primarily argues that her appeal raises a substantial issue of law related to her request for a First Amendment jury instruction.  Mot at 4-8.  Defendant additionally argues that her appeal raises a substantial question of law regarding the ongoing constitutional validity of the FACE Act after the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022); Mot. at 8-9.   The Court will address each argument in turn.

#### A.      First Amendment Instruction

Defendant argues that her appeal raises a substantial question of law as to whether the Court should have charged the jury with an instruction "defin[ing] the parameters of the First Amendment in the context of this case."  Mot. at 4-8.  The Court does not agree.

The Court denied the Defendant's request for a jury instruction on the First Amendment and also held that Defendant was not permitted to argue "that [her] actions were aligned with the First Amendment."  Dkt. 97 ("FPTC Tr.") at 68:11-70:2; Trial. Tr. 713:15-714:3.  This ruling was based primarily on the reasons set forth in the Court's ruling on Defendants' motion to dismiss the indictment in *Williams I*, 701 F. Supp. 3d 257, which is incorporated herein by reference.  FPTC Tr. at 68:11-70:2; Trial. Tr. 713:15-714:3.

7

However, at the same time, the Court held that Defendant and Chavannes would be permitted to argue that they were "engaged in a lawful expression of [their] personal beliefs," FPTC Tr. at 70:3-18, and they did so repeatedly throughout the trial. The Court permitted the Defendant and Chavannes to point out that some of the language that they used was from the Bible and that it should be considered in context. *Id.* at 70:11-13. The Court also permitted them to argue that they were there to protest and express their religious views, which they brought out throughout the trial. *Id.* at 70:3-18; Trial Tr. 714:4-8. However, any argument that the charged conduct was constitutionally protected was a legal argument that had already been decided by the Court, and was not a jury question. FPTC Tr. at 68:11-18. The Court held that invoking the First Amendment during the trial would ask the jury to speculate as to what the First Amendment does and does not protect and whether it precludes this criminal charge. *Id.* at 68:19-24. The Court therefore found that such arguments and instructions were irrelevant under Federal Rule of Evidence ("Rule") 401 and further would run afoul of Rule 403 because such arguments and instruction would confuse the issues, invite jury nullification, and mislead the jury about whether they were required to make legal constitutional determinations, when they were not. *Id*. at 69:15-20. The Court also found persuasive that in *United States v. Darnel*, No. 22-cr-00096 (D.D.C. 2023), which also was a FACE Act trial, another court refused to provide a First Amendment instruction requested by the defendant, and that all cases to the contrary cited by Defendant were not FACE Act cases. Trial Tr. at 713:15-714:3.

Even without a charge on the First Amendment, the jury was appropriately charged. The Court added to the jury instructions concepts that were intended to address solely First Amendment activities. Specifically, the Court included language in the charge that "actions that merely make the approach to a reproductive health facility unpleasant or even

emotionally difficult, including yelling, are not prohibited." *Id.* at 849:9-12. This portion of the charge was grounded in the Second Circuit's direction in *New York ex rel. Spitzer v. Operation Rescue National*, 273 F.3d 184, 195-96 (2d Cir. 2001) (reviewing First Amendment constraints on application of the FACE Act). And the distinction between "actions that merely make the approach to a reproductive health facility unpleasant or even emotionally difficult, including yelling" and behavior that is prohibited by the FACE Act was repeatedly highlighted by counsel for Defendant and Chavannes in closing statements. *See, e.g.*, Trial Tr. at 790:16-21 ("These are actions that merely make the approach to a reproductive health facility unpleasant or even emotionally difficult, including yelling, which are not prohibited."); *id.* at 769:6-11 (arguing that although Defendant and Chavannes "yelled and screamed" there was "no proof that [the clinic worker] was threatened or intimidated in any way"); *id.* at 790:2-15 (arguing that although "it's emotionally challenging . . . sitting there watching [Defendant and Chavannes] loud, proud, protesting, proclaiming," clinic workers and volunteers were "not being intimidated, interfered with, or injured").

Defendant argues that a First Amendment instruction is relevant to the jury's ability to assess her intent. Mot. at 7. But it is irrelevant whether Defendant intended to exercise her First Amendment rights if she also intended, as the jury was correctly instructed, to injure, intimidate, or interfere with patients or employees of a reproductive health center because they were seeking or providing reproductive health care services. *See, e.g.*, *New York ex rel. James v. Griepp*, 991 F.3d 81, 103 (2d Cir.) ("[E]ven when a protestor's goal is simply to share their beliefs through counseling or literature, the protestor may still be liable for a FACE violation if they intentionally engage in acts which naturally and probably will injure, intimidate, or interfere with someone seeking or providing reproductive health services."), *vacated on other grounds*, 11 F. 4th 174 (2d Cir. 2021); *Operation Rescue*, 273 F.3d at 194 (noting that

9

plaintiffs are likely to prove certain protestor activities violated the FACE Act by disrupting access through physical obstruction despite the possibility that "protestors' purpose may have been to communicate their views").  Indeed, both sides agreed that the jury should be charged – and hence, was charged – that "the Government must prove that the defendant would not have acted but for employees of the Manhattan Planned Parenthood providing or having had provided reproductive health services, or but for patients of the Manhattan Planned Parenthood obtaining or having had obtained reproductive health services.  Put another way, employees of the Manhattan Planned Parenthood providing or having had provided reproductive health services, or patients of the Manhattan Planned Parenthood obtaining or having had obtained reproductive health services, must have been a necessary motivation but not the sole motivation for the defendant's actions."  Dkt. 94 at 5-6; Trial Tr. at 851:7-18.  The Court further added, at Defendant's request, instructions that directed the jury to consider all the circumstances when evaluating the Defendant's motivation: "[i]n determining whether the Government has proved that the Defendant acted as she did because a patient was obtaining or had obtained, or a clinic employee was providing or had provided, reproductive health services, you may consider statements made or language used by the Defendant, the circumstances surrounding the alleged offense, and all other evidence that may shed light on the Defendant's motives."  Dkt. 94 at 6; Trial Tr. at 851:19-25.  Finally, the jury also found beyond a reasonable doubt that bodily injury resulted from Defendant's behavior.  Dkt. 112 at 91; Dkt. 110.

For these reasons, whether the Court should have instructed the jury on the First Amendment in the context of this case is a not substantial question, because it is not a "close" question or one that "very well could be decided the other way."  *Randell*, 761 F.2d at 125 (citation omitted).  Even if there was a substantial question as to whether the Court should

have instructed the jury on the First Amendment, given the instructions that were provided to the jury, Defendant would still not prevail because the question is not "so integral to the merits of the conviction on which [the] defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.* (citation omitted). By finding Defendant guilty of Count II, the jury found, beyond a reasonable doubt, that the Defendant used force, threats of force, or physical obstruction, with the intent to injure, intimidate, or interfere with patients or employees of the Manhattan Planned Parenthood, because they were providing or seeking reproductive health services, resulting in bodily injury. Such behavior, especially that which resulted in bodily injury, would not be protected by the First Amendment, as the Court held in *Williams I*, 701 F. Supp. 3d at 271-274.

   *B. Dobbs*

   Defendant also argues that her appeal raises a substantial question of law regarding the ongoing constitutional validity of the FACE Act. Mot. at 8. Defendant's prior motion to dismiss the Indictment raised several issues, including the ongoing constitutional validity of the FACE Act after the Supreme Court's decision in *Dobbs*, 142 S. Ct. 2228. *See Williams I*, 701 F. Supp. 3d at 268. The Court denied that motion to dismiss, and, as relevant here, held that *Dobbs* did not overrule *United States v. Weslin*, 156 F.3d 292, 297 (2d Cir. 1998), binding Second Circuit precedent holding that the FACE Act was a constitutional exercise of Congress's power under the Commerce Clause. *Williams I*, 701 F. Supp. 3d at 268-69. Defendant now argues that "it is possible that the Circuit will take a fresh look at *Weslin* in light of" *Dobbs*. Mot. at 8. This does not raise a substantial question of law.

   As the Court explained when denying Defendant's motion to dismiss the Indictment, "[l]ike the Second Circuit, all other courts of appeal to consider the issue have held that the reproductive health provisions of the FACE Act are constitutional under the Commerce

11

Clause." *Williams I*, 701 F. Supp. 3d at 269. Further, "[n]othing in *Dobbs* calls the constitutionality of the FACE Act into question. *Dobbs* does not address the FACE Act. It does not consider Congress's power to enact legislation under the Commerce Clause. Nor does it diminish the interstate economic nature of the reproductive health field. . . . In short, *Dobbs* does not overrule *Weslin*." *Id.*

In addition, as the Court pointed out in *Williams I* – and which continues to be the trend after *Williams I* – to the Court's knowledge, every other court to have been presented with an argument after *Dobbs* that the FACE Act is unconstitutional has rejected it. *See United States v. Zastrow*, No. 22-cr-00327, 2024 WL 3558363, at *3 (M.D. Tenn. July 26, 2024); *United States v. Vaughn*, No. 22-cr-00327-6, 2024 WL 3512071, at *4 (M.D. Tenn. July 22, 2024); *United States v. Handy*, No. 22-cr-096, 2023 WL 4744057, at *2-4 (D.D.C. July 25, 2023); *United States v. Gallagher*, 680 F. Supp. 3d 886, 905-07 (M.D. Tenn. 2023); *see also United States v. Houck*, No. 22-cr-00323, 2023 WL 144117, at *5 (E.D. Pa. Jan. 10, 2023).

Therefore, incorporating by reference all of the reasons set forth in the Court's decision in *Williams I*, 701 F. Supp. 3d at 268-71, Defendant's argument that the *Dobbs* decision undermines the constitutional validity of the FACE Act does not raise a question of law that is "close . . . or one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (internal quotation marks and citation omitted).

## II. Delay, Risk of Flight, and Protection of the Public

With respect to the other Section 3143(b) criteria, the appeal process is progressing, and the Court does not find that Defendant's appeal was taken for purposes of delay. However, the Court is now concerned that Defendant is a flight risk. The calculus of risk of flight has changed from when Defendant was sentenced, and certainly from when she was

evaluated for purposes of pretrial supervision. Defendant is now facing an imminent and significant incarceratory sentence of 41 months. At Defendant's sentencing hearing in July, the Court provided Defendant with a voluntary surrender date in October so that she could get her affairs in order before surrendering. Dkt. 151 at 58:23-59:13. However, in the three weeks leading up to her surrender date – many months after she was sentenced in July 2024 – she has filed a flurry of motions seeking to avoid incarceration, exhibiting a desperation that causes the Court to be concerned of a risk of flight. Only two and a half weeks before her surrender date, Defendant informed the Court for the first time that she scheduled a non-emergency surgery, and requested a significant extension of her voluntary surrender date. *See* Dkt. 160. The Court denied that request, and noted that based on the circumstances and the materials submitted in support of that request, "it appears that the scheduling of this surgery now is an attempt to postpone the incarceratory sentence that has been imposed and is scheduled to soon commence." *Williams III*, 2024 WL 4345573, at *1. When that motion failed, and now the week prior to her voluntary surrender date, Defendant for the first time makes the instant request for bail pending appeal, despite the fact that she filed her notice of appeal nearly three months ago. *See U.S. v. Velissaris*, No. 22-cr-00105 (DLC), 2023 WL 3018513, at *3 (S.D.N.Y. Apr. 20, 2023) (defendant did not prove by clear and convincing evidence that he was not likely to flee if released pending appeal based in part on his repeated filings with the court). The Court is evaluating this recent behavior in light of Defendant's history of noncompliance with the law in terms of her criminal history, including her recent conviction in 2022, her travel throughout the United States to engage in the conduct with which she was charged in this case, and her seeming inability to control her impulses as evidenced in the video evidence at trial showing her shoving, yelling, and ultimately injuring individuals who either brushed against her, addressed her or tried to get by her, culminating in

13

her violent statement at sentencing that if she wasn't "saved" by religion at the time, she "would have probably punched that lady [Ms. Verrilli] in the face." Dkt. 151 at 42:12-16. While the Court has considered Defendant's ties to the community and family responsibilities, the totality of the present circumstances leads the Court to conclude that Defendant may try anything that she can to avoid incarceration and has therefore not shown by clear and convincing evidence that she is not a flight risk.

## CONCLUSION

For the foregoing reasons, Defendant's motion for bail pending appeal is DENIED.

Dated: October 15, 2024
New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge