UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA,         :     Docket No. 24-2032
:
            *Appellee*,             :     **AFFIRMATION IN**
:     **OPPOSITION TO THE**
         - v. -               :     **DEFENDANT'S**
:     **MOTION FOR BAIL**
BEVELYN WILLIAMS,         :     **PENDING APPEAL**
   also known as Sealed Defendant 1,  :
:
        *Defendant-Appellant,*    :
:
EDMEE CHAVANNES,        :
   also known as Sealed Defendant 2,  :
:
            *Defendant.*        :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK           )
COUNTY OF NEW YORK        :     ss.:
SOUTHERN DISTRICT OF NEW YORK   )

Mitzi Steiner, pursuant to 28 U.S.C. § 1746, hereby affirms under penalty of perjury:

1.     I am an Assistant United States Attorney in the Office of Damian Williams, United States Attorney for the Southern District of New York. I represented the Government in the District Court, and I represent the Government

in this appeal. I submit this affirmation in opposition to defendant-appellant Bevelyn Williams's motion for bail pending appeal.

## PRELIMINARY STATEMENT

2.      Williams appeals from a judgment of conviction entered on July 24, 2024 in the United States District Court for the Southern District of New York, by the Honorable Jennifer L. Rochon, United States District Judge.

3.      Indictment 22 Cr. 684 (JLR) (the "Indictment") was filed on December 13, 2022, and charged Williams in two counts. Count One charged Williams with conspiracy to violate the Freedom of Access to Clinic Entrances Act ("FACE"), in violation of 18 U.S.C. § 371, in connection with her multi-year campaign to interfere with individuals seeking to obtain and provide reproductive health services at clinics located around the country. Count Two charged Williams with violating FACE on June 19 and 20, 2020, in violation of 18 U.S.C. § 248(a)(1), (b)(2), and 2, by using force, threats of force, and physical obstruction with the intent to injure, intimidate, and interfere with patients and providers of reproductive health services at the Planned Parenthood clinic in Manhattan, resulting in bodily injury.

4.      Trial commenced on February 12, 2024. On February 22, 2024, the jury convicted Williams on Count Two and acquitted her on Count One.

5.      On July 24, 2024, the District Court sentenced Williams principally to a term of 41 months' imprisonment and set a surrender date of October 16, 2024. On July 30, 2024, Williams filed a notice of appeal.

6.      On September 27, 2024, Williams filed a letter with the District Court requesting a postponement of her surrender date in order to undergo surgery before serving her sentence. On September 30, 2024, the Court denied William's motion to adjourn the surrender date.[1]

7.      On October 7, 2024—nine days before her surrender date—Williams moved in the District Court for bail pending the outcome of her appeal. The District Court denied the motion on October 15, 2024, finding that Williams had failed to raise a substantial question of law or fact on appeal.

8.      On October 16, 2024, Williams surrendered as directed to the custody of the Bureau of Prisons. She is currently serving her sentence.

9.      On November 17, 2024, Williams filed the instant motion for release pending appeal.

---

[1] The Court noted that "[a]t no time was the Court ever informed of any impending or considered surgery," and it was "[o]nly after this Court imposed an incarceratory sentence [that] the Defendant now informed the Court that she seeks to undergo surgery, right before her surrender date." (Dkt. 160 at 2). The Court therefore found that "[b]ased on all of the information before the Court, it appears that the scheduling of this surgery now is an attempt to postpone the incarceratory sentence that has been imposed and is scheduled to soon commence." (*Id.*).

## **STATEMENT OF FACTS**

10.     From June 2020 through August 2022, Williams repeatedly used force, threats of force, and obstruction at reproductive health centers around the country to interfere with the ability of patients to receive reproductive health services and staff to provide that care. At trial, the Government introduced evidence of four such incidents: at the Manhattan Planned Parenthood in June 2020; the Fort Meyers Planned Parenthood in January 2022; the Atlanta Women's Center in July 2022; and the Nashville Planned Parenthood in July 2022. The June 2020 events at the Manhattan Planned Parenthood were the basis of Count Two of the Indictment, the offense of conviction.

### **I.      June 19-20, 2020—Manhattan Planned Parenthood**

11.     On June 19 and 20, 2020, Williams led and participated in an organized protest outside the Manhattan Planned Parenthood, which serves up to 100 patients a day, houses up to 150 staff members, and provides a range of reproductive health services, including abortion, birth control, STI testing, HIV prevention and testing, pregnancy testing, and breast and cervical cancer screening. (PSR ¶¶ 10, 13-21; Tr. 339-40, 347).[2]

---

[2] "PSR" refers to the Presentence Investigation Report prepared in connection with Williams's sentencing; "Dkt." refers to an entry on the District Court's docket for this case; "Tr." refers to the trial transcript; "GX" refers to a Government exhibit;

12. During the incident, Williams repeatedly physically blocked the front and side entrances to the facility. Video surveillance footage of the event recorded Williams standing in front of both doors on numerous occasions (*see, e.g*., GX 117, 122, 150, 162, 187), and directing other protesters to assist with obstructing entrances to the health center, (*see, e.g*., GX 132, 170). Three witnesses present at the protest—Lauren Betters, a legal observer; Adrienne Verrilli, a member of the Planned Parenthood staff who was serving as a volunteer escort; and Ron Lyman, the head of security for the clinic—testified that Williams repeatedly blocked both entrances to the clinic and directed other protesters to do the same. (*See, e.g.*, Tr. 143-44, 153, 156-58, 206, 215, 220, 350-51, 381-82, 456-57, 460). Indeed, Williams celebrated that "out of all the appointments today, only one couple came in" to the facility. (PSR ¶ 20; GX 131, 148).

13. Betters, the legal observer, took notes observing that Williams was "scream[ing] in [the] face" of patients attempting to enter the clinic, that a patient could not "get into [the] clinic without … protesters touching her," and that the "protesters [were] inside the [barricade] and entrant cannot make it in unobstructed." (GX 702). These notes were consistent with videos depicting Williams and others

---

and "Mot." refers to Williams's motion for bail pending appeal in this Court. Unless otherwise noted, case quotations omit internal quotation marks, citations, and previous alterations.

blocking the front door of the facility throughout the day and confronting patients. (*See, e.g.*, GX 117). As a result, Planned Parenthood staff started directing patients to the administrative door down the block. (GX 122).

14.     Similarly, on June 20, 2020, Betters observed that Williams "states she is blocking the door and refused to move from the door," and described that "people cannot get into the clinic" and the "[s]econd door is completely blocked by [Williams] and she refuses to move." (PSR ¶ 16; GX 702). Betters's notes were corroborated by videos of Williams blocking patients from entering the door. (GX 150, 187). Later that morning, Betters wrote that "someone tries to enter and [Williams] stands in front of the door and doorway when door is able to be opened" at which point Williams "sticks her head into the clinic" and "stand[s] in the entry way when door is open." (GX 702).

15.     During the protest, Williams also repeatedly threatened Planned Parenthood staff members. On June 19, 2020, Williams stood within inches of the clinic's chief administrative officer and threatened to "terrorize this place" and warned that "we're gonna terrorize you so good, your business is gonna be over mama." (PSR ¶ 17; GX 102). Similarly, Williams stood near a Planned Parenthood security officer and threatened "war." (GX 101). Williams also stated that she would act by "any means necessary." (GX 171).

16. Additionally, on the second day of the protest, Williams used force which resulted in bodily injury to Verrilli, a Planned Parenthood employee. Video surveillance footage of the incident showed that Williams rammed her way into protective barricades that police had positioned in front of the main entrance to the facility, attempting to break through counter-protestors and a Planned Parenthood security officer located at the front of the barricade. (PSR ¶ 19; GX 158). When Williams was unable to break through, she moved to the side of the barricade to attempt to get inside of the barricades. Williams then pulled the barricade away from the security officer and shoved her way past Verrilli, who was positioned inside of the barricade next to the main entrance. (PSR ¶ 19; GX 161). Verrilli braced herself with both of her hands to try and maintain her position at the door, while Williams repeatedly shoved Verrilli to get closer to the clinic entrance. (PSR ¶ 19). Eventually, Verrilli "got pushed over" when Williams forced herself inside of the barricade and in front of the door. (GX 161; Tr. 365-67).

17. Williams then used force to crush Verrilli's hand in the front door of the clinic. (PSR ¶ 18). Verrilli testified that, as she attempted to escort a fellow volunteer into the front door, Williams "was leaning on the door to try to keep it shut," and Verrilli was able to "open [the door] a little bit." (Tr. 368). Surveillance footage of the assault showed Williams pressing her body against the door to prevent

Verrilli from escorting the volunteer into the clinic, smashing Verrilli's hand inside. (PSR ¶ 18; GX 163, 191; *see also* Tr. 368 ("[Williams] kept leaning on the door and smashed my hand in the door.")). Verrilli screamed that her hand was being smashed, but Williams continued to shove the door shut on Verrilli's hand. (PSR ¶ 18; GX 163, 191). Verrilli felt the door "smashing on [her] hand," where it kept "letting go and hitting, and letting go and hitting as [Verrilli] was trying to pull the door open to get [her] hand out." (Tr. 372). Williams "just continued to push on the door" for approximately ten seconds. (GX 191; Tr. 372). While Williams crushed Verrilli's hand in the door, it took three people, including Verrilli, to pry the door open. (PSR ¶ 18; GX 191). As a result of the assault, Verrilli suffered bodily injury including swelling, bruising, stiffness, and pain over a period of several weeks. (PSR ¶ 18; GX 355, 386; Tr. 373-74).

18.     Surveillance video also captured Williams shoving an apparent Planned Parenthood volunteer, (GX 156; Tr. 378-80), and Williams also "took a swing at one of the security guards," (Tr. 214).

## II.  Additional Incidents

19.     There was evidence presented at trial of three other incidents, as well. On January 27, 2022, Williams participated in an incident outside of a Planned Parenthood in Fort Myers, Florida. (PSR ¶¶ 22-25). During this incident, Williams

directed other participants to blockade the front and side doors of the facility while a patient who needed urgent medical attention was attempting to enter the clinic. (PSR ¶ 23). As a result of the blockades, the clinic was placed on lockdown—meaning no patients or staff could enter or exit. (PSR ¶ 25). A doctor on duty that day testified that she was delayed in treating at least a dozen patients, three of whom were scheduled for time-sensitive procedures that could have resulted in bleeding, infection, or significant pain without timely treatment. (*Id*.).

20.     On July 14, 2022, Williams and others invaded the Atlanta Women's Center in Atlanta, Georgia. (PSR ¶¶ 26-28). After invading the clinic, the group surrounded and shouted at a patient seated alone in the waiting room before the facility's staff intervened and took the patient to a secure area. (PSR ¶ 27; GX 205). Williams also screamed through the door at patients until they were forced to leave. (*Id*.). During the invasion, all medical care inside the clinic was forced to come to a halt. (PSR ¶ 28).

21.     In July 2022, Williams and others attempted to invade a Planned Parenthood in Nashville, Tennessee, initially by posing as patients. (PSR ¶¶ 29-32). When they were turned away by security, they ran onto the property, up to the front door of the facility, threatened a security officer standing outside and staff sheltering

immediately inside, and refused to leave the property despite multiple requests by staff. (PSR ¶ 30). This resulted in a lockdown of the facility. (PSR ¶ 31).

## ARGUMENT

### WILLIAMS'S MOTION FOR BAIL PENDING APPEAL SHOULD BE DENIED

### I.    Applicable Law

22.    A court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment" be detained pending appeal unless it finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community if released" and that the appeal "raises a substantial question of law or fact likely to result in—(i) reversal [or] (ii) an order for a new trial." 18 U.S.C. § 3143(b).

23.    This provision gives effect to Congress's view that "[o]nce a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even to permit it in the absence of exceptional circumstances." *United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985). Following a guilty verdict and sentencing, there is a "presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004). It is the defendant's burden to "rebut this presumption with clear and convincing evidence." *Id.*

10

24.    A "substantial question" is "a close question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985). "If a court does find that a question raised on appeal is 'substantial,' it must then consider whether that question is so integral to the merits of the conviction … that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.* With respect to all issues, "the burden of persuasion rests on the defendant." *Id.*

25.    This Court gives great deference to a district court's bail decisions and will reverse only where there is "clear error"—that is, only if "on the entire evidence," the Court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Mattis*, 963 F.3d 285, 291 (2d Cir. 2020).  This Court reviews questions of law *de novo*. *Abuhamra*, 389 F.3d at 317.

## II.   Discussion

### A. Williams Has Not Met Her Burden to Demonstrate a Substantial Issue on Appeal

26.    Williams argues that her appeal presents substantial questions of law with respect to both the First Amendment and the constitutionality of FACE. However, this Court has considered these questions and rejected the very arguments raised by Williams on this appeal, and Williams's appeal amounts to a request for this Court to overturn settled precedent.

### i. There is No Substantial Question Concerning A First Amendment Instruction

27. Williams has failed to raise a substantial question regarding the District Court's decision not to give a First Amendment instruction to the jury or to permit argument to the jury on that basis. (Mot. 9). As Judge Rochon correctly concluded in denying Williams's motion to dismiss on similar grounds, Williams's First Amendment argument is "foreclosed by binding Second Circuit precedent." (Dkt. 70 at 18). In reaching this ruling, Judge Rochon relied on this Court's decision upholding the constitutionality of FACE against a First Amendment challenge. *See United States v. Weslin*, 156 F.3d 292, 296-98 (2d Cir. 1998). In *Weslin*, this Court recognized that the conduct prohibited by FACE—the "obstruction of reproductive health clinics"—is not protected by the First Amendment even if this obstructive conduct "frequently has expressive components." *Id.* at 297.

28. Applying *Weslin*, Judge Rochon also denied Williams's motion for a jury instruction regarding the First Amendment. (Dkt. 97 at 68). Judge Rochon concluded that whether Williams's conduct was constitutionally protected constituted a legal question that the District Court had already decided, and was not the province of the jury. (*Id.* ("Invoking the First Amendment during the trial would be asking the jury to speculate as to what the First Amendment protects or does not

12

protect, and this Court has already held, based on binding precedent, that the charged conduct does not violate the First Amendment.")).

29. Judge Rochon's determination was correct and required by precedent. FACE does not criminalize constitutionally protected speech. Instead, Williams was charged with using the unlawful means specified in the statute—force, threats of force, and physical obstruction—to intimidate and interfere with persons seeking to obtain or provide reproductive health services. *See* 18 U.S.C. § 248(a)(1). That conduct is not constitutionally protected. "Violence or other types of potentially expressive activities that produce special harms distinct from their communicative impact are entitled to no constitutional protection." *Wisconsin v. Mitchell*, 508 U.S. 476, 48 (1993).

30. Accordingly, this Court has found FACE to be a constitutional, facially neutral regulation of conduct, not speech, that does not violate the First Amendment. *Weslin*, 156 F.3d at 297 (FACE "does not govern speech as such but, instead, is concerned with conduct that frequently has expressive components"). Every other circuit to consider the issue has concluded the same. *See Norton v. Ashcroft*, 298 F.3d 547, 552 (6th Cir. 2002) (noting that FACE "does not directly apply to speech, but rather prohibits three types of conduct—use of force, threat of force, and physical obstruction—which are not protected by the First Amendment"); *United States v.*

*Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000); *Hoffman v. Hunt*, 126 F.3d 575, 580-82 (4th Cir. 1997); *United States v. Bird*, 124 F.3d 667, 683 (5th Cir. 1997); *United States v. Soderna*, 82 F.3d 1370, 1374-75 (7th Cir. 1996); *Terry v. Reno,* 101 F.3d 1412, 1418-19 (D.C. Cir. 1996); *United States v. Dinwiddie*, 76 F.3d 913, 921-24 (8th Cir. 1996). And this reasoning is especially applicable to this case, where the jury was also instructed that it had to find that Williams's "conduct resulted in bodily injury." (Tr. 847; *see* Dkt. 170 at 11).

31.     Williams argues that the jury could have convicted solely on the basis of her shouting at patients and doctors, and that a First Amendment instruction would have addressed that issue. (Mot. 12-13). But as Judge Rochon noted in denying Williams's motion for bail pending appeal, the jury instructions did address that issue with language that was tailored to "address solely First Amendment activities" and that comported with this Court's precedent, specifically instructing the jury that "actions that merely make the approach to a reproductive health facility unpleasant or even emotionally difficult, including yelling, are not prohibited." (Dkt. 170 at 8-9 (citing *New York ex rel. Spitzer v. Operation Rescue National*, 273 F.3d 184, 195-96 (2d Cir. 2001)).

32.     Finally, in precluding argument and instruction to the jury regarding the First Amendment, Judge Rochon applied a straightforward analysis under Federal

Rules of Evidence 401 and 403. As Judge Rochon explained, "it is irrelevant whether [Williams] intended to exercise her First Amendment rights if she also intended, as the jury was correctly instructed, to injure, intimidate, or interfere with patients or employees of a reproductive health center because they were seeking or providing reproductive health services." (Dkt. 170 at 9). The District Court also appropriately concluded that allowing argument to the jury about the First Amendment would be impermissible under Rule 403 as it would "confuse the issues, invite jury nullification, and mislead the jury about whether or not they have to make constitutional determinations"—which they did not and which determination had already been made as a matter of law. (*Id.*).

33.    Notably, Williams's motion in this Court does not cite any case holding that a First Amendment instruction is required or even appropriate in a FACE prosecution, relying instead on inapposite cases about tax protesters and the material support for terrorism statute. (Mot. 14-15). The criminal statutes involved in those cases are not analogous to FACE, which by its terms is limited to those who "obstruct the provision of reproductive health services," and thus does not carry the risk that a jury properly instructed on the elements of the crime will convict based on protected First Amendment activity. *See Weslin*, 156 F.3d at 296-97.

34.     Since Williams's argument is foreclosed by clear Circuit precedent, Judge Rochon did not err in finding that Williams had failed to present a substantial question with respect to a First Amendment jury instruction.

### ii. There is No Substantial Question Concerning the Constitutionality of FACE

35.     Williams next argues that the District Court erred in concluding that she had failed to raise a substantial question of law regarding the constitutionality of FACE under the Commerce Clause, or, in the alternative, following the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). But as Judge Rochon properly found, these issues are also foreclosed by this Court's precedent. As such, the District Court did not err in concluding that neither question presents a substantial question of law on appeal.

### 1. FACE and the Commerce Clause

36.     The District Court did not err in finding that Williams failed to raise a substantial question regarding the constitutionality of FACE under the Commerce Clause. As Judge Rochon correctly noted, the Second Circuit and every other court to have examined FACE's constitutionality has found it to be a valid exercise of Congress's power under the Commerce Clause. (*See* Dkt. 170 at 12); *see also, e.g.*, *Weslin*, 156 F.3d at 296; *Norton*, 298 F.3d at 556; *Gregg,* 226 F.3d at 264-66;

*Hoffman*, 126 F.3d at 584; *Bird*, 124 F.3d at 678-684; *Soderna*, 82 F.3d at 1373-74; *Terry,* 101 F.3d at 1412-17; *Dinwiddie*, 76 F.3d at 919.

37.    Williams makes no effort to grapple with these holdings. Instead, Williams urges the Court to apply the Supreme Court's decisions in *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), which held that the Commerce Clause did not provide Congress with authority to enact the Gun-Free School Zones Act and the Violence Against Women Act, respectively. However, the courts that have found FACE valid under the Commerce Clause have already considered those precedents in reaching that conclusion. For instance, in *Weslin*, this Court applied the Commerce Clause framework set forth in *Lopez* to uphold FACE. *See Weslin*, 156 F.3d at 296. And the Supreme Court in *Morrison* held that *Lopez* "provides the proper framework" for Commerce Clause analysis. *Morrison*, 529 U.S. at 609; *see also Norton*, 298 F.3d at 556 (holding that FACE also survives scrutiny under *Morrison*). *Lopez* and *Morrison* thus offer no basis to reconsider *Weslin*.

38.    Even if this Court were not bound by its precedent, Williams fails to articulate any basis for her argument that FACE runs afoul of the Commerce Clause. Unlike the statutes at issue in *Lopez* and *Morrison*, FACE directly protects patients, health care providers, and clinics who are engaged in interstate commerce, as

17

Congress found that "women travel interstate to obtain reproductive health care services," "doctors travel from state to state and often cover great distances to perform abortions," and "clinics purchase medical and other supplies in interstate commerce." *Weslin*, 156 F.3d at 296. Thus, Williams's argument that *Lopez* and *Morrison* somehow cast doubt on *Weslin*'s upholding of FACE is meritless and raises no substantial legal question.

39.    Williams similarly argues that Judge Walker's concurring opinion in *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47 (2d Cir. 2021), *cert. denied,* 143 S. Ct. 90 (2022) supports her position that FACE is invalid under the Commerce Clause. But Judge Walker's concurrence was expressly limited to a subsection of Section 248 that is not at issue in this case. In *Jingrong*, Judge Walker considered the limited question of whether Section 248(a)(2), which prohibits the use of force, threats of force, or physical obstruction against worshippers *at places of religious worship*, is a proper exercise of Congressional power under the Commerce Clause. *See Jingrong*, 16 F.4th at 63. Indeed, Judge Walker acknowledged that this Court has upheld the provision of FACE that "prohibits violence at abortion clinics," and distinguished the provision dealing with clinics from the provision dealing with places of religious worship. *Id.* at 66 (citing *Weslin*). Thus, Judge Walker's *Jingrong* opinion does not disturb this Court's precedent that

18

Section 248(a)(1) is a valid exercise of Congress's authority under the Commerce Clause.

### 2. FACE Is a Content-Neutral Regulation of Speech

40. Williams next argues that the District Court erred in concluding that Williams failed to raise a substantial question of law regarding the constitutionality of FACE as a content-based regulation of speech. (Mot. 19-21). Again, that argument is flatly contrary to this Court's precedent in *Weslin*, which held that "FACE is not a viewpoint- or content-based regulation." 156 F.3d at 296. Thus, Judge Rochon properly concluded that Williams's argument did not raise a substantial question of law.

41. A restriction that is not content-based and only incidentally restricts expressive activity is subject to intermediate scrutiny. *See United States v. O'Brien*, 391 U.S. 367, 388 (1968); *Norton*, 298 F.3d at 553. As this Court has explained, "*O'Brien* establishes a three-prong test: (i) the regulation must serve an important or substantial governmental interest; (ii) the interest must be unrelated to the suppression of expression; (iii) the incidental restriction of First Amendment freedoms must be narrowly tailored to that interest." *Weslin*, 156 F.3d at 297.

42. As an initial matter, and as discussed above, the plain language of FACE makes clear that it prohibits conduct and does not regulate speech. Namely,

Section 248(a)(1) prohibits the use of force, threats of force (*i.e.*, speech falling outside the ambit of the First Amendment), and physical obstruction. 18 U.S.C. § 248(a)(1); *see Weslin*, 156 F.3d at 297; *Norton*, 298 F.3d at 552. Applying the *O'Brien* test, this Court has sustained the constitutionality of FACE. *Weslin*, 156 F.3d at 298; *see also Norton*, 298 F.3d at 553; *Dinwiddie*, 76 F.3d at 924; *Terry*, 101 F.3d at 1420.

43.     In her motion, Williams relies on two Supreme Court cases that, Williams argues, "altered the landscape of content neutrality law." (Mot. 19 (citing *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015) and *McCullen v. Coakley*, 573 U.S. 464 (2014)). Williams argues that FACE "does not prohibit all interference with patients or providers of reproductive health services, but only those whose interference is *motivated by the fact* that those patients or providers are 'obtaining or providing reproductive health services.' 18 U.S.C. § 248(a)(1)," and thus that the statute constitutes "content-based regulation of speech." (Mot. 25).

44.     That argument, however, ignores how the Supreme Court and this Court have interpreted *McCullen* and *Reed*. The Supreme Court has cautioned against too broad a reading of *Reed*. In *City of Austin v. Reagan National Advertising of Austin LLC*, 596 U.S. 61 (2022), the Supreme Court reversed a Fifth Circuit decision for applying "too extreme an interpretation" of *Reed* and clarified that *Reed*

20

did not upset well-settled precedent that "restrictions on speech may require some evaluation of the speech and nonetheless remain content neutral." *Id.* at 69, 72; *see also Brokamp v. James*, 66 F.4th 374, 395-96 (2d Cir. 2023) (applying *Reed* to hold that a law may be content-neutral even if it requires consideration of the "subject matter" and "function or purpose" of regulated speech).

45.     Williams's argument also ignores how this Court has reaffirmed *Weslin* even after being asked to reexamine it in light of *Reed* and *McCullen*. *See New York v. Griepp*, 991 F.3d 81 (2d Cir.), *vacated on other grounds*, *New York by James v. Griepp*, 11 F.4th 174 (2d Cir. 2021). In *Griepp*, this Court reaffirmed its holding in *Weslin* that Section 248(a)(1) is content-neutral. The Court explained that Section 248(a)(1) applies "*whenever* access to reproductive health services is obstructed. It contains no requirement whatsoever that the offenders intend to communicate a particular message—or any message at all—by their obstructive actions." *Id.* at 128. In other words, while the statute requires a motive or intent to interfere with the provision of reproductive health services, it cares nothing of the message expressed by the conduct. *See Griepp*, 991 F.3d at 128. The Court noted, for example, that "FACE would prohibit striking employees from obstructing access to a clinic in order to stop women from getting abortions, even if the workers were carrying signs that said, 'We are underpaid!' rather than 'Abortion is wrong!'" *Id.*

46. The defendant also suggests that the Supreme Court's decision in *Dobbs*, in which the Supreme Court overruled *Roe v. Wade*, 410 U.S. 113 (1973), and held that abortion was not a protected right under the Constitution, "altered the legal landscape surrounding the constitutionality of the Face Act." (Mot. 26). To the contrary, courts have consistently found that the constitutionality of FACE was unimpacted by *Dobbs*. That is because FACE has never been based in a federal right to abortion; it is instead an appropriate exercise of Congress's power to legislate under the Commerce Clause. *See Norton*, 298 F.3d at 556; *United States v. Handy, et al.*, No. 22 Cr. 096, 2023 WL 4744057, at \*2 (D.D.C. July 25, 2023) (finding *Dobbs* did not disturb precedent regarding the validity of FACE); *United States v. Zastrow*, 22 Cr. 327, 2024 WL 3558363, at \*2-3 (M.D. Tenn. July 26, 2024) (same). Thus, as Judge Rochon noted in denying Williams's motion to dismiss, while Williams "may be correct that the Supreme Court in *Dobbs* uprooted aspects of American life and law[,] *Dobbs* did not cast into question the reproductive health-care provisions of the FACE Act." (Dkt. 70 at 18).

### B. Williams Has Not Demonstrated by Clear and Convincing Evidence that She Is Not Likely to Flee

47. As set forth above, this Court should not disturb the District Court's finding that Williams has failed to raise a substantial question on appeal. Even if, however, this Court were to conclude that Williams had raised a substantial question,

the District Court correctly concluded that Williams has failed to demonstrate by clear and convincing evidence that she does not pose a risk of flight. The District Court noted its concern that Williams posed a risk of flight both due to the length of Williams sentence (41 months), as well as the fact that in the "three weeks leading up to her surrender date—many months after she was sentenced in July 2024—she has filed a flurry of motions seeking to avoid incarceration, exhibiting a desperation that causes the Court to be concerned of a risk of flight." (Dkt. 170 at 12-13). In addition, Judge Rochon noted that Williams has exhibited a "seeming inability to control her impulses." *Id.* As such, Judge Rochon did not err, much less clearly err, in concluding that Williams has failed to demonstrate by clear and convincing evidence that she is not a risk of flight.

## **CONCLUSION**

48.    For the foregoing reasons, Williams's motion for bail pending appeal

should be denied.

Dated:      November 27, 2024
            New York, New York

                                         Respectfully submitted,

                                         DAMIAN WILLIAMS
                                         United States Attorney

By:    /s/_____
       Emily Johnson
       Mitzi Steiner
       Assistant United States Attorneys
       Tel: (212) 637-2409/-2284

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(2)(A), the undersigned counsel hereby certifies that this opposition complies with the type requirements of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this opposition, there are 5,083 words in this opposition.

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York*

By:                MITZI STEINER,
*Assistant United States Attorney*